IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.     CRIMINAL NO. 2:21-cr-00062-1

LARRY ALLEN CLAY, JR.

**Response of the United States to
Defendant's Motion to Reopen Post-Trial Proceedings and Motion for a New Trial**

Comes now the United States of America by Jennifer Rada Herrald, Assistant United States Attorney for the Southern District of West Virginia, and hereby files this response to defendant's motion to reopen the time to file post-trial motions [ECF No. 395] and motion for a new trial [ECF No. 396]. Defendant does not satisfy the requirements under Fed. R. Cr. P. 33 to either reopen the time to file or obtain a new trial, and his motion for a new trial should be dismissed (or, in the alternative, denied).

**BACKGROUND**

On April 28, 2023, the jury returned a verdict of guilty on all four counts in the Fifth Superseding Indictment. At his sentencing hearing in August 2023, defendant requested, and was granted, new counsel. After a series of continuances, defendant's sentencing is set for December 19, 2024. On December 5, 2025, roughly 18 months after the time to file post-trial motions closed under Fed. R. Crim. P. 33, defendant filed a motion for a new trial that functionally is based upon a claim of ineffective assistance of trial counsel and a claim that the Court erred in allowing defendant to proceed to trial with his desired counsel despite a potential conflict of interest.

1

## ARGUMENT

### I. Motion to Reopen

Fed. R. Crim. P. 33 sets forth detailed directives regarding the permissible time to file a post-trial motion for a new trial. One provision, under Rule 33(b)(1), sets forth the timing for a claim based upon "newly discovered evidence." Rule 33(b)(2) states that "any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilt."

Rule 33 "is a claim-processing rule" that is "inflexible." *Eberhart v. United States*, 546 U.S. 12, 19 (2005). Such claim-processing rules "are to be rigidly applied when invoked by a litigant." *Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010); *see also Eberhart*, 546 U.S. at 19 (holding that "claims-processing rules thus assure relief to a party properly raising them"). Defendant's asserted basis for the motion to dismiss is not based upon any purported new evidence, and the United States herein timely invokes this claims-processing rule regarding the timing limitations of Rule 33. Under the mandated rigid application of the rule, defendant's motion to permit the late filing of a motion for new trial must be denied.[1]

Defendant's motion relies upon an argument regarding an "unwaivable conflict" between defendant and his trial counsel. The issue of the potential conflict of interest was thoroughly addressed by the district court, including through an evidentiary hearing, and therefore cannot be deemed newly discovered. The Fourth Circuit has also held that information related to ineffective

---

[1] While defendant filed a motion to reopen the time to file post-trial motions, Fed. R. Cr. P. 45(b)(2) only permits such an extension after the time to file has expired based upon a showing of excusable neglect. Defendant did not make such a showing in his motion, and given that the Fourth Circuit has found that ineffective assistance of counsel claims should be raised in the first instance in a § 2255 motion, there is no reason to believe that an attorney could neglect (excusably or inexcusably) to timely file such a motion under Rule 33. Therefore, Rule 45(b)(2) does not permit defendant to sidestep the otherwise mandatory dismissal of his Rule 33 motion as untimely.

2

assistance of counsel, even if discovered after trial, does not constitute "evidence" that can permit a late-filed Rule 33 motion. *See United States v. Smith*, 62 F.3d 641, 648 (4th Cir. 1995) (the Fourth Circuit "expressly confirm[ed] . . . that information supporting an ineffective assistance claim is not 'evidence' within the meaning of Rule 33 and, therefore, that a motion for a new trial predicated on ineffective assistance of counsel must be brought, if at all, within seven days of judgment regardless of when the defendant becomes aware" of alleged ineffective assistance). Instead, "claims of ineffective assistance of counsel should be raised in the first instance in a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255." *United States v. Stockstill*, 26 F.3d 492, 497 (4th Cir. 1994). *Stockstill* involved a Rule 33 motion filed by defense counsel who was appointed following trial but prior to sentencing, so obtaining new counsel between trial and sentencing does not change this proposition. *See Stockstill*, 26 F.3d at 496-97.

For these reasons, defendant's motion to reopen the time to file a post-trial motion under Rule 33 must be denied.

**II.     Rule 33 Motion**

Even if defendant's motion for a new trial based upon a supposedly "unwaivable conflict" had been timely filed, it should be denied.

Under the Sixth Amendment, defendants have the right to conflict free counsel (*Wood v. Georgia*, 450 U.S. 261, 271 (1981)) and the ability to waive that right (*Wilson v. Moore*, 178 F.3d 266, 279 (4th Cir. 1999). As the Fourth Circuit recently clarified in *Stanko v. Sterling*, "[n]othing limits a defendant's right to waive *his* right to conflict-free counsel; indeed, it is buttressed by his right to counsel of his choice." 109 F.4th 681, 691-92 (4th Cir. 2024) (emphasis in original). Therefore, the term "unwaivable conflict" is somewhat misleading in that it may incorrectly suggest that there are certain conflicts that a *defendant* is barred from waiving. *See id.*

3

When discussing an "unwaivable conflict," what is actually referenced is that idea that "in the most extreme cases" a district court may be without discretion to accept a defendant's otherwise permissible waiver because a conflict is "so severe and obviously prejudicial that a court's interest in fairness (and its appearance) outweighs the defendant's interest in choosing his lawyer." *Id.* at 692. The Fourth Circuit has not precisely defined what might constitute such an extreme conflict, but it has observed that "the bar for such a non-waivable conflict is set extremely high, with other courts describing a conflict 'so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation' or 'so severe as to render a trial inherently unfair.'" *Id*. (internal citations omitted). Also, importantly, district courts are given broad discretion and "substantial latitude" in determining whether such a conflict exists, for such courts are "'whip-sawed by assertions of error no matter which way [it] rule[s]': an accusation of impermissible conflict on the one hand and of the deprivation of the right to counsel of choice on the other." *Id.*, *quoting Wheat v. United States*, 486 U.S. 153, 161 (1988).

Defendant's claimed "unwaivable conflict" does not constitute an example of the "most extreme cases" of conflicted counsel, and the district court properly accepted defendant's repeated requests to maintain his trial counsel despite being advised, in detail, of the potential disadvantages he might face based upon a potential conflict of interest. During an initial hearing on the issue of the conflict, defendant asked to address the Court between witnesses and stated, "I'm asking the Court, this is the man [Mr. Joy] I picked. This is the man I hired to represent me. This is the man I want to represent me. And I don't think it's fair to remove the man I want to represent me in this hearing . . . I would ask the Court to look kindly on my request to keep Mr. Joy as my attorney." ECF No. 302 at 37-38. In response to this request from defendant, the Court explained in detail how district courts have an independent interest in ensuring that trials are ethically conducted and

fair, even if that might come into conflict with a defendant's right to have counsel of his choosing. *Id.* at 38-39. After hearing testimony and argument regarding the alleged conflict, the Court concluded that a potential conflict existed that would require a knowing and intelligent waiver by defendant.

As part of this process, the Court explained to defendant that Mr. Joy's cross-examination of Kristen Naylor-Legg, a key government witness, might be "hindered" due to a risk that impeachment via a letter Naylor-Legg wrote to the court recanting her testimony might expose allegations of misconduct by Mr. Joy. *Id.* at 57. Defendant repeated back, in his own words, that "Mr. Joy would not represent me correctly a hundred percent [with regard to the cross of Naylor-Lgg], that he's riding the fence." *Id.* at 58. The Court further explained that if Mr. Joy did impeach Naylor-Legg via her letter, information would likely be presented to the jury that suggested Mr. Joy attempted to influence a witness in the case and asked defendant to repeat that back in his own words. *Id.* at 58-59. After all this advice was provided, and defendant was encouraged to consult with either Mr. Joy or independent counsel, defendant affirmed he wanted to waive the conflict and keep Mr. Joy. As stated in his own words, defendant recognized that "[Mr. Joy] will not represent me one hundred percent full capacity because he's riding the fence and it would take the credibility away from the jurors in this case." *Id.* at 59-60. In light of the evidence regarding the potential conflict and defendant's statements, and in full awareness of the Court's independent need to ensure the integrity of the trial, the Court accepted defendant's waiver of any conflict regarding Mr. Joy's potential cross-examination of Naylor-Legg. *Id.* at 60.

During trial itself, and contrary to defendant's assertion in the instant motion that "the veracity of Ms. Kristen-Naylor-Legg went uncontested at trial," Mr. Joy cross-examined Naylor-Legg at length, including about statements she had made to her husband about the government

twisting the evidence to compel her to plead guilty and about her motivation to get a lower sentence by testifying for the government. *See, e.g.,* ECF No. 333 at 211-12; ECF No. 338 at 57-58, Indeed, the United States elicited testimony from Naylor-Legg on direct examination about how she had told her husband on multiple occasions that the government threatened and coerced her into taking a plea and that the admissions she was making about trafficking the victim were false, with Naylor-Legg explaining that she had lied to her husband when making those statements. *See, e.g.,* ECF No. 333 at 173-75. While the letter itself (and her explanations for why they were false statements) was not raised, testimony regarding her repeated assertions to her husband that the government coerced her into pleading guilty was placed before the jury, as well as her admissions to repeatedly lying to both her husband and the government at various points during the case. Her veracity was far from uncontested at trial.

Following Naylor-Legg's testimony and Mr. Joy's decision to not impeach her with the letter, the Court took a recess and again inquired with defendant regarding waiver of the conflict. ECF No. 338 at 83-88. The Court explained the nature of the foregone impeachment, ensured the defendant had read the letter and knew its contents, and permitted defendant to confer with independent counsel. Having been so advised, and in full awareness that Mr. Joy had indeed declined to impeach with the letter, defendant again waived any conflict and asked to continue forward with Mr. Joy.

The waivers of conflict in this case were made with full knowledge of the risks, and those waivers were valid. The Court was well within its broad discretion to accept that waiver. And this case does not rise to the level of a conflict so extreme that the trial was rendered inherently unfair. Indeed, Naylor-Legg was impeached on similar information to that in the letter — her assertions that the government had coerced her into pleading guilty and that her admissions of guilt were

false — so this was not a situation where the potential conflict led to a complete failure of the defense counsel to vigorously cross-examine a government witness. Mr. Joy's cross-examination of Naylor-Legg spanned over 80 pages of transcript and covered her incentive to help herself by testifying for the government and her habit of lying when it suited her interests. ECF No. 333 at 185-2015; ECF No. 338 at 3-58.

The potential conflict in this case was waivable and that waiver was made knowingly, intelligently, and voluntarily. This case does not even approach the type of "unwaivable conflict" contemplated by the Fourth Circuit. Defendant's motion for a new trial must be denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for to reopen the period for post-trial motions should be denied and his motion for a new trial dismissed, or in the alternative denied.

    Respectfully submitted,

    WILLIAM S. THOMPSON
    United States Attorney

    /s/Jennifer Rada Herrald
    JENNIFER RADA HERRALD
    Assistant United States Attorney
    WV State Bar No. 12181
    300 Virginia Street East
    Room 4000
    Charleston, WV 25301
    Telephone: 304-345-2200
    Fax: 304-347-5104
    E-mail: Jennifer.herrald@usdoj.gov

**CERTIFICATE OF SERVICE**

    It is hereby certified that the foregoing "Response of the United States to Defendant's Motion to Reopen Post-Trial Proceedings and Motion for a New Trial " has been electronically filed and service has been made on opposing counsel by electronic mail this the 11th day of December, 2024, to:

>Timothy J. LaFon, Esq.
>Ciccarello, Del Guidice & LaFon
>1219 Virginia St. E., Suite 100
>Charleston, WV 25301

>/s/Jennifer Rada Herrald
>JENNIFER RADA HERRALD
>Assistant United States Attorney
>WV State Bar No. 12181
>300 Virginia Street East
>Room 4000
>Charleston, WV 25301
>Telephone:  304-345-2200
>Fax:  304-347-5104
>E-mail: Jennifer.herrald@usdoj.gov